# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| A.T., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT OF COLUMBIA,<br><br>Defendant. | Civil Action No. 16-1086 (CKK) |

## MEMORANDUM OPINION
(May 18, 2021)

Plaintiffs A.T., a student eligible for special education services in the District of Columbia, and her parents, Dawn Carpenter and Edward Trepacz (collectively "Plaintiffs")[1] filed a complaint seeking judicial review of a Hearing Officer's Determination ("HOD 1") following an administrative due process hearing under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq. See* Complaint for Declaratory and Injunctive Relief, ECF No. 1.  The parties briefed cross-motions for summary judgment regarding HOD 1,[2] but before the

---

[1] Plaintiffs and Defendant were referred to as Petitioners and Respondent by the Hearing Officer but will be referred to as Plaintiffs and Defendant herein.

[2] "Although motions for review of an HOD are called motions for summary judgment, the court does not follow 'a true summary judgment procedure'" *Middleton v. Dist. of Columbia*, 312 F. Supp. 3d 113, 128 (D.D.C. 2018) (quoting *L.R.L. ex rel. Lomax v. Dist. of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012)).  In a civil action brought to challenge a Hearing Officer's determination pursuant to the IDEA, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the court may

Court considered those motions, this case was placed in abeyance pursuant to the parties' [27]

Consent Motion to Place the Case in Abeyance, to await the Supreme Court's ruling in *Endrew F.*

*ex rel. Joseph F. v. Douglas Cty. Sch. District RE-1,* 580 U.S. \_\_, 137 S. Ct. 988 (2017).

Subsequent to the issuance of the *Endrew F.* decision, the parties supplemented their briefing, and

this Court issued its [33] Memorandum Opinion and Order, whereby the case was remanded to the

[original] Hearing Officer:

> to determine whether further factual development and other proceedings are warranted in
> light of *Endrew F.*, and for any such proceedings to be held. If the Hearing Officer
> determines that no additional factual development or alterations to his conclusions of law
> are necessary in light of *Endrew F.*, he shall so specify in a reasoned supplemental
> decision that, if there is further litigation in this matter, shall be subject to the Court's
> review. In particular, the Hearing Officer should explain the extent to which, if any, his
> decision is altered by the Supreme Court's instruction that "[t]o meet its substantive
> obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a
> child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137
> S. Ct. at 999.

Memorandum Opinion and Order, ECF No. 33, at 5.

After the Hearing Officer held a second administrative due process hearing and issued a

second Hearing Officer Decision ("HOD 2"), the parties filed their [44] Joint Status Report

indicating that "the only remaining substantive issue for the Court to decide is whether defendant

must reimburse plaintiffs for the tuition and related costs incurred in enrolling the student in the

nonpublic program for the 2015-16 school year." Joint Status Report, ECF No. 44. The parties

have filed cross-motions for summary judgment relating to that issue, and those motions are ripe

_____

receive." *D.R. v. Gov't of the Dist. of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009). The motion
for summary judgment is "the procedural vehicle for asking the judge to decide the case on the
basis of the administrative record." *M.G. v. Dist. of Columbia,* 246 F. Supp. 3d 1, 7 (D.D.C. 2017)
(citations omitted).

for review by this Court.

Presently before this Court are Plaintiffs' [46] Motion for Summary Judgment and Defendant District of Columbia's [49] Cross Motion for Summary Judgment.[3]  Upon consideration of the parties' pleadings,[4] the relevant legal authorities, and the record as a whole, the Court shall **DENY** Plaintiffs' [46] Motion for Summary Judgment and **GRANT** Defendant's [49] Cross Motion for Summary Judgment.  A separate Order accompanies this Memorandum Opinion.

## I. BACKGROUND

### A. Statutory Framework

The IDEA was enacted to "ensure that all children with disabilities have available to them a free appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  *M.G. v. Dist. of Columbia*, 246 F. Supp. 3d 1, 7 (D.D.C. 2017) (citing 20 U.S.C. § 1400(d)(1)(A))*, see also Boose v. Dist. of Columbia*, 786 F. 3d 1054, 1056 (D.C. Cir.

---

[3] Defendant District of Columbia (the "District") encompasses the District of Columbia Public Schools ("DCPS").

[4] The Court's consideration has focused on the following materials: Plaintiffs' Motion for Summary Judgment, and Memorandum in support thereof, and Statement of Undisputed Material Facts ("Pls.' Mot."), ECF No. 46; District of Columbia's Opposition and Cross Motion for Summary Judgment ("Def.'s Opp'n"), ECF No. 48 (with the Cross Motion docketed at ECF 49); Plaintiffs' Opposition to Defendant's Cross Motion and Reply to Defendant's Opposition to Plaintiffs' Motion ("Pls.' Reply"), ECF No. 50; Defendant's Reply to Plaintiff's Opposition to Defendant's Cross Motion ("Def.'s Reply"), ECF No. 52; Plaintiffs' Notice of Supplemental Authority ("Pl.'s First Supp."), ECF No. 56; Plaintiffs' Supplemental Filing ("Pls.' Second Supp."), ECF No. 58; Defendant's Notice of Supplemental Authority ("Def.'s Supp."), ECF No. 59; and the record in this case, including the Administrative Record ("AR"), particularly, the April 25, 2016 Hearing Officer Determination ("HOD 1"), ECF No. 14-1, and the March 16, 2018 Supplemental Hearing Officer Determination ("HOD 2"), ECF No. 54.  Both HOD 1 and HOD 2 will be discussed herein.  In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

2015). Once a child is identified as disabled, the school district must convene a meeting of a multi-disciplinary team to develop an individualized education program ("IEP") for the student. *See* 20 U.S.C. § 1414 (d)(2)(A).

The IEP "is the centerpiece of the statute's education delivery system for disabled children[.]" *Endrew F.*, 137 S. Ct. at 994 (citation omitted). An IEP must include a variety of information, including the child's current levels of academic achievement and functional performance, measurable annual goals, how the child's progress towards the goals will be measured, and the special education and related services to be provided to the child. § 1414(d)(1)(A)(I). The IEP must be formulated in accordance with statutory requirements that "emphasize collaboration among parents and educators" and "require careful consideration of the child's individual circumstance." 20 U.S.C. § 1414(d)(1)(B); *see also* § 1415(b)(1) (the IDEA guarantees parents of disabled children the opportunity to participate in the evaluation and educational placement process). To meet the substantive requirements of the IDEA to provide a FAPE for an eligible child, "the child's IEP sets out an educational program that is reasonably calculated to enable the child to receive educational benefits." *Endrew F.*, 137 S. Ct. at 999 (quotation and internal quotation marks omitted).

Once the IEP is developed, the school system must provide an appropriate educational placement that comports with the IEP. *Alston v. Dist. of Columbia*, 439 F. Supp. 2d 86, 90 (D.D.C. 2006). "If no suitable public school is available, the school system must pay the costs of sending the child to an appropriate private school." *Dist. of Columbia v. Vinyard*, 901 F. Supp. 2d 77, 80–81 (D.D.C. 2012) (Kollar-Kotelly, J.) (quoting *Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005)). However, parents who "unilaterally" place a child with a disability in a private school, without consent of the school system, "do so at their own financial risk." *Florence*

*Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993) (quoting *School Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373-74 (1996)).  To qualify for tuition reimbursement under the IDEA, a plaintiff must demonstrate that (1) the school district failed to provide a FAPE, (2) the plaintiff's private placement was suitable, and (3) the equities warrant reimbursement for some or all of the cost of the child's private education.  *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009).

### B. Factual Background

A.T. (herein referred to as "A.T." or the "Student") was born significantly premature, resulting in some brain abnormalities.  Administrative Record ("AR") at 30, 790.[5]  She is a student who has been diagnosed with Attention Deficit Disorder and Learning Disabilities, and she has particular issues in the higher level skill areas.  AR at 7.   More specifically, A.T.'s processing speed and work output are slow; she has some pragmatic language issues, difficulties with multi-step directions, and her oral formulation is labored and sometime imprecise.  *Id.*  At the age of five, A.T. suffered a traumatic brain injury after contracting the viral infection meningoencephalitis, and she lost her ability to walk, talk, eat, and maintain most body functions.  AR at 7, 30, 594-95.  She has since regained most of her functioning, though she has a language disability and some minor motor problems as a result.  AR at 7, 792-96.

---

[5] The 1147-page initial Administrative Record ("AR") herein is indexed at ECF 14, and is divided into 19 subfiles, located at ECF 14-1 through 14-19.  Pages 1148-1941 were added to the Administrative Record at ECF No. 54.  References to AR page numbers are to the page numbers 1-1941, with the exception of the two HODs, which will be referenced by specific document number and page numbers assigned by the Electronic Case Filing ("ECF") system.  All pleadings cited herein will reference the page numbers assigned by ECF.

For school year 2014-2015, A.T. attended Kingsbury Day School, a non-public school, where she made good progress on math skills, speech and language production and understanding. AR at 8.  On June 10, 2015, District of Columbia Public Schools ("DCPS") convened a meeting to develop an IEP for A.T. for School Year 2015-2016.  AR at 131.  Prior to that meeting,  A.T.'s parents were sent a draft IEP, AR at 9, which they marked up with changes proposed by their educational consultant, Dr. Laura Solomon.  AR at 114.  DCPS agreed to make the requested changes to the present levels, goals and accommodations sections of the IEP.  AR at 154, 156.  The IEP provided for 25.5 hours of specialized instruction per week and approximately two hours of related service, amounting to 27.5 hours per week, which included occupational, physical and speech/language therapy services.  AR at 24, 177.  The IEP contained goals in math, reading, writing, speech and language, as well as cognitive, health/physical, and motor skills/physical development. AR at 10.  DCPS did not discuss any potential placements during the IEP meeting, but instead informed A.T.'s parents that they would receive a location of services letter in the days following the meeting.  AR at 819-21.

DCPS selected Jefferson Middle School ("Jefferson") as a location of services that could implement the IEP and sent a letter to the Plaintiffs, on June 22, 2015, notifying them that A.T. would be placed at Jefferson during School Year 2015-2016.  AR at 157.  A.T.'s mother and Dr. Solomon were able to visit the proposed program at Jefferson – the BOOST program – on July 8, 2015.  AR at 162, 320, 821-2.  They had some concerns about the appropriateness of Jefferson for A.T., which included: the behavioral patterns of some students in the BOOST program; the size of the building in terms of A.T.'s ability to navigate without becoming fatigued; the reading instruction methodology; the lack of science and Spanish classes; the quick speaking pace of teachers, which might be difficult for A.T. due to her slower language processing; and the

difference in maximum hours of special education in the IEP (27.5 hours) and at Jefferson (26.25 hours).  AR at 326-27, 358-59.  On July 9, 2015, A.T.'s IEP was amended to include access to a key lock and early dismissal.  AR at 11.  On August 5, 2015, Plaintiffs notified DCPS that A.T. would be attending the Chelsea School ("Chelsea") during School Year 2015-2016.  Chelsea is a nonpublic, full-time special education school in Hyattsville, Maryland, serving middle and high school students with language-based learning disabilities and Attention-Deficit/Hyperactivity Disorder.  AR at 712.  A.T. never attended Jefferson; instead, she attended Chelsea during School Year 2015-2016.  AR at 13.

On February 10, 2016, Plaintiffs filed an administrative due process complaint challenging whether A.T.'s IEP for School Year 2015-2016 provided a "full-time" special education and whether placement at Jefferson was appropriate and could fulfill the special education hours in the IEP, and further seeking reimbursement for A.T.'s attendance at Chelsea.  AR at 345-363.  A due process hearing was held on April 6 and 7, 2016, before Hearing Officer Michael Lazan.  AR at 559-872, 873-1147.  The Hearing Officer issued a determination on April 25, 2016, finding that A.T.'s parents failed to meet their burden of proof on all issues and denying them all relief.  HOD 1, ECF No. 14-1, 3-26.  More specifically, in the HOD 1, the Hearing Officer concluded that: (1) DCPS did not fail to provide a "full-time" special education IEP for School Year 2015-2016 based on its lack of any programming during lunch and recess: (2) Jefferson was not an inappropriate educational placement [despite the parents' concerns about the reading methodology and behavior of students and block classes];  (3) the difference in the IEP's provision of 27.5 hours of specialized instruction and the 26.25 hours of specialized instruction that A.T. would have received at Jefferson was *de minimus*, and accordingly, in light of these conclusions, there was no denial of FAPE.  *Id.* at 16-17, 22-25.  As previously noted, on June 29, 2017, this Court remanded the case

7

back to the Hearing Officer to determine whether further factual development and other proceedings were necessary to address the impact of the Supreme Court's decision in *Endrew F.*

A remand hearing was held on March 1, 2018, and witness testimony was heard. AR at 1782, 1799, 1845, 1903. On March 16, 2018, the Hearing Officer issued a Supplemental Hearing Officer Determination denying A.T.'s parents all relief. AR at 1151-1173. More specifically, in HOD 2, the Hearing Officer heard from additional witnesses and took additional testimony. He reconsidered the lunch and recess claims after *Endrew F.* and found that the IEP "provides enough social support to allow the Student to make "markedly more than minimal" social and emotional progress in school" with no denial of FAPE. HOD 2, ECF No. 54, at 26. The Hearing Officer further revisited and reaffirmed the appropriateness of the reading methodology (which was addressed in HOD 1). With regard to the sufficiency of the parents' involvement in the school selection process, he noted that this issue was not raised in the Due Process Complaint but was first raised by the parents on remand and therefore, would not be considered. Furthermore, relying on case law, the Hearing Officer declined to "find post-HOD settlements to be material to any analysis of the offer of FAPE." *Id.* at 28. Accordingly, in HOD 2, the Hearing Officer ordered that the matter be dismissed with prejudice. *Id.*at 29.

Currently pending before this Court are the parties cross-motions for summary judgment on the only remaining issue in this case – whether the Plaintiffs are entitled to tuition reimbursement for School Year 2015-2016 when they enrolled A.T. at Chelsea even though her placement was at Jefferson.

## II. LEGAL STANDARD

The IDEA requires that the school system offer an IEP that is reasonably calculated to enable a disabled student to make progress in light of his or her particular circumstances. *See*

*Endrew F.*, 137 S. Ct. at 992, 998-99; *cf. Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cty v. Rowley*, 458 U.S. 176, 188-89 (1982) ("According to the definitions contained in the Act, a 'free appropriate public education' [FAPE] consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction."). The IDEA requires a federal court to "make an independent decision based upon a preponderance of the evidence" in determining whether a school system provided a student with a FAPE. *Rowley*, 458 U.S. at 205-06. "Courts sitting on an IDEA appeal do not have unfettered review but must . . . give due weight to the administrative proceedings and afford some deference to the expertise of the IHO [independent hearing officer] and school officials responsible for the child's education." *Gill v. District of Columbia*, 751 F. Supp. 2d 104, 108 (D.D.C. 2010) (citing *Lyons v. Smith*, 829 F. Supp. 414, 418 (D.D.C. 1993) (internal quotation marks omitted). Furthermore, "a hearing officer's findings 'based on credibility determinations of live witness testimony' are given 'particular deference' where there is no supplementation of the record." *McAllister v. Dist. of Columbia*, 45 F. Supp. 3d 72, 76-77 (D.D.C. 2014) (citation omitted).

In contrast, "a hearing decision 'without reasoned and specific findings deserves little deference.'" *Reid ex rel. Reid v. Dist. of Columbia,* 401 F. 3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie*, 862 F.2d 84, 87 (D.C. Cir. 1991)) (internal quotation marks omitted); *see also M.O. v. Dist. of Columbia*, 20 F. Supp. 3d 31, 40 (D.D.C. 2013) ("[W]hile a certain amount of deference should be accorded to the knowledge and expertise of the hearing officer, courts will accord less deference if the hearing officer's determination lacks reasoned and specific findings.") The party challenging the administrative decision carries the burden of proof of persuading the court that the Hearing Officer was wrong. *Kerkam*, 862 F.2d at 887; *Turner v. Dist. of Columbia*,

952 F. Supp. 2d 31, 35 (D.D.C. 2013) (same); *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 62 (2005) (finding that the burden of proof in an administrative hearing concerning an IEP is "upon the party seeking relief").

### III. ANALYSIS

Plaintiffs allege generally that DCPS failed to provide a "cogent and responsive" explanation for the IEP and this failure was excused by the Hearing Officer.  Pls. Mot., ECF No. 46, at 20-24; *see Endrew F.*, 137 S. Ct. at 1001-1002.  Plaintiffs put forth five specific arguments to support their claim that the HODs at issue in this case should be reversed.  First, Plaintiffs challenge the weight accorded to the witnesses by the Hearing Officer  Second, Plaintiffs contend that the Hearing Officer dismissed their concerns about the reading methodology used at Jefferson and the behavior of students there.  Third, Plaintiffs assert that the Hearing Officer dismissed the IEP Team's failure to program for times such as lunch and recess.  Fourth, Plaintiffs allege that the Hearing Officer improperly ignored post-IEP evidence.  Finally, Plaintiffs argue that DCPS did not permit them to meaningfully participate in the placement decision.[6]  These arguments will be addressed in turn.

### A. Witness Credibility

Plaintiffs challenge the weight given to witnesses by the Hearing Officer.  In HOD 1, the Hearing Officer noted that Plaintiffs presented 4 witnesses – the student's mother; an educational consultant, who was treated as an expert in the "evaluation and identification of disability and the

---

[6] As previously noted, the Hearing Officer noted that this issue of meaningful participation by the Student's parents was not raised by Plaintiffs in their Due Process Complaint and was therefore not considered.  It will however be addressed herein, as Plaintiffs indicate that it was raised tangentially and both parties have presented argument in their briefs.

programming for and instruction of educationally disabled students;" the Director of Chelsea, who was deemed as expert in the "instruction and programming for disabled students;" and a teacher from Chelsea. HOD 1, ECF No. 14-1, at 4. DCPS presented three witnesses – a physical therapist, a teacher from Jefferson, and a Compliance Specialist. *Id.* During the remand hearing, over an objection by DCPS, the Hearing Officer permitted the parties to present testimony and evidence "to clarify the record in regard to the issues in the Due Process Complaint and to allow the Court to consider post-HOD testimony and evidence if it so chooses." HOD 2, ECF No. 54, at 23. DCPS presented testimony from an expert witness, who opined that Jefferson was an appropriate placement for the Student for School Year 2015-2016, and Plaintiffs recalled their educational consultant and the student's mother. HOD 2, ECF No. 54, at 13.

> Plaintiffs assert that the Hearing Officer:
>
> ignored the expert testimony from the parent's knowledgeable experts. Instead, he relied on the testimony from the school system witnesses. In fact, the Hearing Officer provides little evidence of weighing *any* witness testimony throughout his decision and makes literally no credibility determinations. The Decision fails to acknowledge, much less reconcile, the vast majority of the record and testimonial evidence presented by the parents in this case.

Pls.' Mot., ECF No. 46, at 24; s*ee M.O. v. Dist. of Columbia*, 20 F. Supp. 3d 31, 41 (D.D.C. 2013) (where the court remanded a case because "the hearing officer's determination [did] little to address concerns raised by [educational] professionals," because there was "no discussion of the adequacy of the District's consideration of the recommendations, or why the District's review of the evaluations was credited over those of the plaintiffs' witnesses"); *see also Options Pub. Charter Sch. v. Howe ex rel. A.H.*, 512 F. Supp. 2d 55, 57 (D.D.C. 2007) (reversing and remanding for further administrative proceedings where the hearing officer made "no findings with respect to the basis upon which she credited . . . testimony" and "elsewhere . . . relie[d]

upon speculation").

The Court begins by noting Defendant's contention that, "deference [to the expertise of the Hearing Officer] is at its apex when the court is reviewing matters of "educational policy," or choices implicating "agency expertise," while deference is "at its nadir when the decision lacks thorough, reasoned findings or opines on a purely legal question." *Davis v. Dist. of Columbia,* 244 F. Supp. 3d 27, 38 (D.D.C. 2017) (quotations and citations omitted).  In this case, Defendant contends that the Hearing Officer's "decision *does not* require extensive personal knowledge about student A.T.[;] [r]ather, such a decision depends upon the requirements of the IEP and whether the [proposed] placement can implement the IEP with the combination of special education instruction and related services."  Def.'s Opp'n, ECF No. 48 at 15-16.  Accordingly, Plaintiffs' emphasis on the need for witnesses with detailed first-hand knowledge regarding A.T.'s needs is somewhat misplaced because the issues in this case are not as much about the services that A.T. needs [with the exception of whether A.T. requires services at lunch and recess] but rather, whether the proposed placement can implement her IEP.  Defendant asserts further that, in the instant case, its witnesses were "familiar with A.T., her educational needs, her school records, and the appropriateness of Jefferson Academy for A.T."  Def.'s Opp'n, ECF No. 48, at 14.

A review of the HODs issued by the Hearing Officer indicates that Plaintiffs' assertions regarding the Hearing Officer's alleged errors with regard to witness credibility are not only unsupported by the record in this case, but they are in fact contradicted by the record in this case. As a preliminary matter, this Court notes that both of the HODs being challenged in this case were thorough and well-reasoned, with multiple citations to testimony, evidence and relevant case law. In HOD 1, the Hearing Officer "found all the witnesses in this case to be credible [with] [n]o material inconsistences [ ] with respect to any witness."  HOD 1, ECF No. 14-1, at 5.  "[U]nless

12

the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion, the Court must accept the state agency's credibility determinations." *McAllister v. Dist. of Columbia*, 45 F. Supp. 3d 72, 76 (D.D.C. 2014) (quoting *J.N. v. Dist. of Columbia*, 677 F. Supp. 2d 314, 322 (D.D.C. 2010) (internal quotation marks omitted); *accord Fullmore v. Dist. of Columbia*, Case No. 13-cv-00409 (CRC), 2016 WL 1254208, at *1 (D.D.C. Mar. 29, 2016) ("The Court may not substitute its own views for those of the Hearing Officer[.]") (quotation omitted).  The Hearing Officer's witness "credibility determinations benefit from first-hand observation of live testimony." *S.M. v. Dist. of Columbia*, Civil Action No. 19-2096 (RC), 2020 WL 7230266, at *6 (D.D.C. Dec. 8, 2020).

Moreover, in both HODs, the Hearing Officer clearly credited the witness testimony on the issues that he considered, whether or not such testimony supported or contradicted his ultimate conclusions.  In subsections B and C, below, there are numerous examples of the Hearing Officer discussing and crediting witness testimony as well as recognizing deficiencies in some of the testimony.  Accordingly, Plaintiffs' Motion for Summary Judgment based on improper crediting of witness testimony is denied.

### B. Challenges to the Reading Methodology and Behavior of Students at Jefferson

An educational placement is inappropriate, as a matter of law, where the school cannot implement the child's IEP.  *See e.g. D.K. v. Dist. of Columbia*, 983 F. Supp. 2d 138, 146 (D.D.C. 2013) (where a child could not be placed at a school that does not implement IEPs).  "The IDEA requires school districts to 'offer[ ] placement in a school that can fulfill the requirements set forth in [the student's] IEP.'"  *N.W. v. Dist. of Columbia*, 253 F. Supp. 3d 5, 16-17 (D.D.C. 2017) (quoting *O.O. ex rel. Pabo v Dist. of Columbia*, 573 F. Supp. 2d 41, 53 (D.D.C. 2008))  "The school need not perfectly satisfy the IEP, but cannot commit a material failure, or leave more than

13

a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." *N.W.*, 253 F. Supp. 3d at 17 (internal quotation marks, quotation, and citation omitted).  In this case, Plaintiffs contend that the reading methodology employed at Jefferson and the behavior of the students there made it an inappropriate placement.

With regard to the reading methodology, the Hearing Officer noted that "[d]istricts are not required to put a particular methodology on the IEP."  HOD 1, ECF No. 14-1, at 19 (citing *Rowley*, 458 U.S. at 204).  "[T]here is nothing in the [IDEA] that requires an IEP to include specific instructional methodologies."  HOD 2, ECF No. 54, at 27 (citing 71 Fed. Reg. 46, 665 (2006), 34 CFR 300.320 (d)(1)); *see also S.M. and G.M. v. State of Hawaii, Dep't of Educ.*, 808 F. Supp 2d 1269, 1278 (D. Hawaii 2011) (determining that a child's IEP was not required to specify what methodology his school would use).  Pursuant to the comments to the 1999 IDEA regulations, "there are [however] circumstances in which the particular teaching methodology that will be used is an integral part [of the IEP]."  HOD 1, ECF No. 14-1, at 19 (citing Fed. Reg. Vol. 64, No. 48 (March 12, 1999) at 12552).  The "language in the comments to the regulations suggest that a methodology can be the basis of a FAPE denial claim only where the Student requires a specific methodology to be placed on the IEP and the school district refuses to do so," and the Hearing Officer noted that Plaintiffs provided no case law to contradict this principle.   HOD 1, ECF No. 14-1, at 20; HOD 2, ECF No. 54, at 27.

In the instant case, there is no evidence to suggest that A.T. required a specific reading methodology, but rather, Plaintiffs expressed a preference for a reading methodology other than Read 180, which is used at Jefferson.  Because no specific reading methodology was incorporated into A.T.'s IEP, in cases such as this, methodology questions are generally left to the states' discretion.  *Rowley*, 458 U.S. at 208.

14

The Hearing Officer considered and found "concerning" Dr. Solomon's criticism that the Read 180 program at Jefferson was "too reliant on individual work and that it should be used only as a supplement to the main reading program." HOD 1, ECF No. 14-1, at 19. The Hearing Officer noted however that "the [Read 180] program itself was not characterized by credible DCPS witnesses as one where the students spend long periods of time on a computer," but instead they would spend 15 minutes on the computer. HOD 1, ECF No. 14-1, at 19. Nor did the record indicate that Read 180 was the "sole reading intervention for the student," as Jefferson asked its students to support their homework with the Lexia computer program, *id.* at 19-20, and also used a Spell-Read program. HOD 2, ECF No. 54, at 27. Accordingly, the Hearing Officer found that Jefferson was not an inappropriate placement based on the reading methodology employed there, and Plaintiffs' challenges to the Hearing Officer's decision fail to persuade this Court that the Hearing Officer's finding on this issue should be disturbed.

Plaintiffs allege next that the Hearing Officer ignored their concerns about the behavior of other students at Jefferson including "the near constant interruption of instruction due to behaviors in the classroom and ineffective behavioral intervention." Pls.' Mot., ECF No. 46, at 31-32 (citing to testimony by the educational consultant). Plaintiffs note further that "[n]o DCPS witness fully responded to Dr. Solomon's concerns or offered any specific evidence to show that her description of the behavioral climate was not accurate." *Id.* at 32. The Court finds that Plaintiffs' allegations are inconsistent with the record in this case, as the Hearing Officer recognized that "there is mixed testimony on whether the classes at [Jefferson] were as chaotic as they were characterized by [the educational consultant]." HOD 1, ECF No. 14-1, at 21. More specifically, a witness who was a special education teacher at Jefferson for four years, "indicated that though some students had behavioral issues, those behavioral issues did not get in the way of student instruction, [and this

15

witness] knew the class better than did [the educational consultant, who was [at the school] for a limited amount of time in November." *Id.; see* Def.'s Reply, ECF No. 52, at 9 (citing her testimony). The Court finds that the Hearing Officer was correct in concluding that Jefferson was an appropriate placement, where there was credible testimony by Defendant's witness that contradicted the impact of Plaintiffs' claims of behavioral issues. Accordingly, summary judgment in favor of Plaintiffs is unwarranted regarding issues involving Jefferson's reading methodology and behavioral concerns about Jefferson students.

### C. Programming During Lunch and Recess

In HOD 1, the Hearing Officer noted that "the standard for judging the appropriateness of an IEP is to determine whether the document allows the student to gain some *educational benefit*." HOD 1, ECF No. 14-1, at 16; *see Leggett v. Dist. of Columbia,* 793 F. 2d 59, 70 (D.C. Cir. 2015) (emphasis added). The Hearing Officer found it "unclear how any difficulties the Student might have at lunch or recess would impact on her academically," HOD 1, ECF No. 14-1, at 16, or "what services [Plaintiffs] might be requiring for this student during lunch and recess." *Id.* at 17.

More specifically, the Hearing Office noted that there was testimony and evidence that the Student was "quiet and sensitive" but nothing to establish that she has "severe issues with peers" or that "the lunch and recess at [Jefferson] is particularly anarchic or dangerous;" instead, "the record establishes that the lunchroom at School B is a typical public school lunchroom, staffed with five adults." HOD 1, ECF No. 14-1, at 16. The Hearing Officer stated that Plaintiffs' educational consultant did not testify that this was an unreasonable number of adults nor was the consultant familiar with the school lunchroom at Jefferson because her observation of the school did not include a visit to the lunchroom during lunch. *Id.* Furthermore, while Plaintiffs mentioned that Chelsea was a small school, they did not mention what, if any, special education supports were

provided there during lunch and recess nor did they cite any case law in support of their position regarding the necessity of supports, and as such, the Hearing Officer dismissed Plaintiffs' contentions relating to a denial of FAPE based on lack of services during lunch and recess. *Id.* at 17.

This case was remanded subsequently to the Hearing Officer to re-examine his findings in HOD 1 in light of the standard set forth in *Endrew F.* In that case, the Supreme Court concluded that an IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 137 S. Ct. at 1001. This standard is "markedly more demanding that the 'merely more than de minimis' test" that was applied by many courts. *Id.* at 1000. It is with this standard in mind that the Hearing Officer conducted his hearing on remand. There, the Hearing Officer observed that:

> Petitioners contend that the language in <u>Endrew F.</u> relating to "functional advancement" supports a contention that the HOD should be reversed, indicating that the Student's social and emotional needs are related to functional advancement and that they were inadequately addressed in the IEP and placement. Petitioners posit that those social and emotional needs must be addressed in lunch and recess, and that the failure of Respondent to provide any support to the Student in lunch and recess denied the Student a FAPE.

HOD 2, ECF No. 54, at 24. The Hearing Officer examined and distinguished relevant case law and discussed the record evidence and testimony in this case relating to this issue of recess and lunchroom supports.

The Hearing Officer summarized his analysis as follows:

> Here, the Respondent did not indicate that supports were needed in the lunchroom or at recess for the Student to be able to make social and emotional progress. While Petitioners did so argue, this concern may not have been on their minds when they were observing and considering [Jefferson]. Neither Petitioners nor [their educational consultant] visited the lunchroom at [Jefferson] when they were there. Nor did [the educational consultant]'s report from February, 2014, mention the importance of providing services during lunch or recess to enable social interactions. Importantly, the proposed parental placement,

[Chelsea], also does not provide the Student with any services during lunch and recess. Lunch at [Chelsea] is "fairly basic," with a forty-five minute period split into two twenty-two minute halves. The Student usually sits at lunch with others of the same gender and does not talk a lot though the Student acts appropriately. The Student is not assigned a paraprofessional or a related services provider, and is not given any supplemental aides or supports in the lunch and recess environment.

HOD 2, ECF No. 54, at 25 (discussing witness testimony).

The Court finds that the testimony and evidence presented in this matter afforded the Hearing Officer a basis for his determination that the IEP provides enough social support to allow the Student to make "markedly more than minimal" social and emotional progress in school, and that A.T. was not denied a FAPE. HOD 2, ECF No. 54, at 26. In HOD 2, the Hearing Officer examined this issue of lunchtime and recess supports, in light of *Endrew F.*, where an IEP "must be appropriately ambitious in light of [the student's] circumstances," 137 S. Ct. at 992, and the IEP must "plan for pursuing academic and functional advancement." *Id.* at 999. The Hearing Officer acknowledged Plaintiffs' argument that "[A.T.'s] social and emotional needs must be addressed in lunch and recess," and allegation that DCPS's failure to provide supports during these times denied A.T. a FAPE. HOD 2, ECF No. 54, at 24. The Hearing Officer looked for cases relevant to this issue but found "[f]ew published cases discuss the issue of providing social skills to students during lunch and recess" as instead, "[o]rdinarily, courts discuss lunch and recess as a way to fulfill the . . . statutory and regulatory requirements that the student be educated in the least restrictive environment." HOD 1, ECF No. 54, at 24 (citations omitted). The Hearing Officer distinguished *N.W. v. Dist. of Columbia*, 253 F. Supp. 3d 5, 15-16 (D.D.C. 2017), a case where lack of supports at lunch and recess amounted to a denial of FAPE.[7] The Hearing Officer noted

---

[7] The Hearing Officer noted that Plaintiffs did not cite that case, despite the fact that their counsel was also counsel in that case. HOD 2, ECF No. 54, at 25 n.3.

that in *N.W.*, there was an admission by DCPS during the IEP formulation that the Student needed these type of supports (and a consistent acknowledgement by the District, during the due process hearing), but the Hearing Officer there ignored this evidence.  HOD 2, ECF No. 54, at 25; *see N.W.*, 253 F. 3d at 15.   The Hearing Officer in the instant case then looked to the communication/speech and language goals (related to social functioning) in A.T.'s IEP and the proposal to meet those goals, noting that Plaintiffs did not present any witness with a background in speech and language pathology to challenge these goals as "'unambitious' or 'de minimis' consistent with <u>Endrew F.</u>"  HOD 2, ECF No. 54, at 26.   Accordingly, the Hearing Officer concluded that the IEP provided enough social support to allow A.T. to make "markedly more than minimal" progress in school, both socially and emotionally, and there was no denial of FAPE.  *Id.*

The Court finds that Plaintiffs' argument on this issue is confusing, contradictory, and unsupported by their cited legal authority.  Underlying this issue is Plaintiffs' assertion that Dr. Solomon and other witnesses testified that there should have been lunchtime and recess supports incorporated into A.T.'s IEP, Pls' Mot., ECF No. 46, at 34-36.  But, in contrast, the District notes that the record evidence shows that "the IEP team and the hearing officer agreed that A.T. did not require specialized instruction during lunch and recess."  Def's Opp'n, ECF No. 48, at 17; AR at 17 (discussing the IEP Team's findings), 1081 (testimony by the Resolution Specialist about peer relations and A.T. being around students without disabilities).

Furthermore, Plaintiffs acknowledge that while "the IEP does not address the services [A.T.] would receive [during lunch and recess]," they argue that the IEP meeting notes confirm that there would be "plenty of adults supervising these activities and to offer assistance."  Pls' Mot., ECF No. 46, at 36.  And, in fact, the District notes that the "record evidence shows that at Jefferson, there are a total of five (5) adults at lunch and recess duty every day that can provide

A.T. with supports during those periods."  Def.'s Opp'n, ECF No. 48, at 17; AR at 975, 1073.

Plaintiffs appear to argue that the IEP is deficient because it does not provide information as to

"what this "supervised" time  would look like."  Pls.' Mot., ECF No. 46, at 37.  Plaintiffs cite to

*N.W.*, in support of their denial of FAPE claim, but that case was appropriately distinguished by

the Hearing Officer.   Plaintiffs cite also to *N.S. ex rel. Stein v. Dist. of Columbia,* 709 F. Supp. 2d

57, 73 (D.D.C. 2010) (Kollar-Kotelly, J.) — a factually dissimilar case involving numerous alleged

deficiencies in the IEP — in support of their proffer that a "hearing officer must judge the IEP as

of the time it was created, and not consider information about the proposal which has not been

shared with the parent or information outside of what it captured on the IEP."  Pls.' Mot., ECF No.

46, at 37-38.  Plaintiffs do not however point to what, if anything, was considered by the Hearing

Officer in violation of this 'principle.'

      In this case, the Hearing Officer looked for applicable caselaw, and ultimately raised and

distinguished a case from this Circuit that found lack of provision of supports at lunch and recess

constituted a denial of FAPE.  The Hearing Officer acknowledged that A.T. was quiet and sensitive

and had some social issues.[8]  He indicated however that Plaintiffs did not carry their burden of

proof regarding their claim that denial of supports during lunch and recess hindered A.T.'s social

---

[8] In their Motion, ECF No. 46, at 39-40, in the section alleging that the IEP was deficient
for not providing supports at recess and lunch, Plaintiffs cite to several cases regarding the
importance of social and emotional health, all involving students with serious behavioral issues;
*i.e.*, aggressive and impulsive behavior; disabling anxiety and depression; Asperger's Syndrome
and serious anxiety; schizophrenia, but these cases are distinguishable as the student here has no
serious behavioral issues.   *See* HOD 1, ECF No. 14-1, at 16 (noting that "there is nothing in the
record to establish that the Student has severe issues with peers [and] [t]here is nothing to establish
that she has gotten into physical altercations with peers, or even verbal conflicts with peers, in any
setting at all."); *see also* Pls.' Mot., ECF No. 46, at 41 (noting, without further elaboration, that
"A.T. struggles with social interactions due to her slow processing speed and motor delays." )

and emotional needs and accordingly denied A.T. a FAPE, in light of the record evidence and in accordance with the standard set forth in *Endrew F.* The Court finds that HOD 2 provided a thorough analysis of the *Endrew F.* case, including a summary of Plaintiffs' argument that HOD 1 should be reversed because A.T's "social and emotional needs are related to functional advancement and [ ] they were inadequately addressed in the IEP [with regard to lunch and recess] and placement." HOD 2, ECF No. 54, at 24. The Hearing Officer considered A.T.'s unique circumstances and concluded that A.T.'s IEP was appropriate. Accordingly, Plaintiffs' motion for summary judgment alleging a denial of FAPE because of the lack of lunch and recess supports in the IEP shall be denied on that basis.

### D. Post-IEP Evidence

Plaintiffs argue that the Hearing Officer "improperly ignored evidence of how A.T. has responded to Chelsea and the critical evidence that DCPS has placed and funded her there for each subsequent school year since the one at issue on appeal here." Pls.' Mot., ECF No 46, at 41. In his HOD 2, the Hearing Officer stated that he did "not find post-HOD [placement of A.T. at Chelsea] to be material to any analysis of the offer of FAPE." HOD 2, ECF No. 54, at 28 (string citing cases); *see, e.g., S.S. ex rel. Shank v. Howard Road Academy*, 585 F. Supp. 2d 56, 66-67 (D.D.C. 2008) (where the court found that the measure and adequacy of an IEP decision must be determined at the time it was offered to the student and judged prospectively to avoid "Monday Morning Quarterbacking.")

Plaintiffs argue generally that "[e]vidence obtained after the IEP is written also can be used to assess the inadequacy of the IEP." Pls. Mot., ECF No. 46, at 42 (citing *County Sch. Bd. of Henrico Cty., Va. v. R.T.*, 433 F. Supp. 2d 657, 675 (E.D. Va. 2006)). Plaintiffs ignore however that in the *School Board of Henrico County* case, the Hearing Officer there specifically indicated

that he was considering some post-IEP evidence for a limited purpose of assessing one of

defendant's arguments.  *Id.* at 674.[9]  The Court notes that Plaintiffs' challenge to the *adequacy of*

*the IEP* in the instant case is set forth by the Hearing Officer in Issue 1 - "Did DCPS fail to provide

the Student with a "full-time" special education IEP, i.e., an IEP which provides for all classes

(including "specials" and lunch and free time) outside general education, for the 2015-2016 school

year?" HOD 1, ECF No. 14-1, at 15.[10]  The Court notes further that Plaintiffs' challenge regarding

the alleged inadequacy of the IEP focused on the failure to promote A.T.'s social and emotional

needs during lunch and recess time.  This issue was analyzed in subsection C above.  As part of

his analysis, the Hearing Officer heard testimony regarding A.T.'s [post-IEP] experiences at

Chelsea regarding lunch and recess there.   The Hearing Officer stated that, "[i]mportantly, the

proposed parental placement, [Chelsea], also does not provide the Student with any services during

lunch and recess."  HOD 2, ECF No. 54, at 25.  Furthermore, "[t]he Student usually sits at lunch

---

[9] Plaintiffs also cite *M.M. ex rel D.M. v. Sch. Dist. of Greenville Cty.*, 303 F.3d 523, 532 (4th Cir. 2002) for the proposition courts should "endeavor to rely upon objective factors" such "actual educational progress," but the Court notes that this this quote is taken out of context and bears little connection to the issues in this case.

[10] Issue #2 in HOD 1 related to placement.  There is no Issue # 3 discussed in  HOD 1 because it was resolved prior to the due process hearing.  Issue #4 in HOD 1 was tangentially related to the *adequacy of the IEP*, insofar as the Plaintiffs alleged that Jefferson could not implement the IEP because it could not provide enough special education hours. HOD 1, ECF No. 14-1, at 23-25.  The Hearing Officer not only noted deficiencies in the Plaintiffs' arguments, but he also recognized weaknesses in DCPS's argument regarding the total hours of special instruction.  *See e.g.* HOD 1, ECF No. 14-1, at 24 (discussing the slight discrepancy in hours of specialized instruction and noting that while Witness E [DCPS Compliance Specialist] testified that DCPS could fulfill the entire mandate,[] it [was] unclear how they could do this given that the advisory period is mandatory at [Jefferson]). The Hearing Officer concluded however that any slight discrepancy in hours of specialized instruction [1 hour and 15 minutes per week, here] was *de minimus* and did not constitute a denial of FAPE.  This determination has not been specifically challenged by Plaintiffs in their Motion.

with others of the same gender and does not talk a lot, though the Student acts appropriately." *Id.*
He noted that the Student did not have an assigned services provider or supplemental aide or
supports during lunch and recess. *Id.* Accordingly, some *post-IEP evidence* was considered with
regard to the adequacy of the IEP as it related to the issue of lunch and recess supports.

In a recent case from this Circuit, the Honorable Rudolph Contreras examined whether a
Hearing Officer should have considered a student's post-hearing placement at a private school
after the HOD was issued, where such Hearing Officer found such placement to be "of only limited
relevance to the present dispute." *S.M. v. Dist. of Columbia*, Civil Action No. 19-2096 (RC), 2020
WL 7230266, at *7 (D.D.C. Dec. 8, 2020). The IEP at issue in the *S.M.* case was developed based
on the student's education during several preceding years and the student's academic progress at
that time. The court noted that "[a]t some point after [placement], a line was crossed and [the
student's] IEP team implicitly determined that [her placement] could no longer appropriately serve
[the student] [b]ut there is no indication that line had been crossed when the team prepared the [ ]
IEP." *Id.*[11] The court found that post-hearing placement was not sufficiently compelling to
undermine the Hearing Officer's determination. "The key inquiry regarding an IEP's substantive
adequacy is whether, taking account of what the school knew or reasonably should have known of
a student's needs at the time, the IEP it offered was reasonably calculated to enable the specific
student's progress." *Id.* (citing *Z.B. v. Dist. of Columbia*, 888 F.3d 515, 524 (D. C. Cir. 2018)).
This Court agrees with cases from this Circuit that the relevant inquiry is on the IEP's adequacy

_____

[11] In the instant case, there was no similar "line" that was "crossed" because A.T. never
attended Jefferson. In August 2016, the IEP team agreed on an IEP with increased special
education service hours for School Year 2016-2017, therefore placing A.T. in a nonpublic program
[Chelsea]. Def.'s Mot., ECF No. 46, at 43.

at the time it was developed, based on the information known then.  Accordingly, the Hearing

Officer's refusal to consider the fact that A.T. received a post-IEP placement at Chelsea as material

to his analysis of the adequacy of the IEP was justified, and summary judgment in favor of

Plaintiffs is unwarranted on those grounds.

### E. Parents' Ability to Meaningfully Participate

As previously noted, this issue was not addressed by the Hearing Officer.  In his HOD 2,

the Hearing Officer stated that this issue of lack of involvement in the school selection process

was first raised through the Plaintiffs' brief on remand and it would not be considered because it

was not raised in the due process complaint.  HOD 2, ECF No.  54, at 28.  Plaintiffs note that the

due process complaint states that "DCPS also did not discuss any potential placements during the

IEP meeting, but instead informed the parents that they would receive a location of services letter

in the days following the meeting advising them where it was proposing that [A.T.'s] IEP be

implemented."  AR at 357.  If Plaintiffs are relying on that general statement as their basis for

alerting the Hearing Officer to a specific challenge based on "meaningful participation," their

reliance is misplaced.   Plaintiffs further contend that under the "Issues Presented," in the hearing

request, they wrote, "D. Did DCPS deny [A.T.] and her family a FAPE by failing to discuss

potential placements for the 2015-16 school year at the June 10, 2015 IEP meeting?"  AR at 362.

This Court notes however that the issues noted by the Hearing Officer in the Prehearing Order,

AR at 375-381, do not mirror the issues raised by Plaintiffs in the Due Process Complaint.

Furthermore, the Prehearing Order states that "**[a]ny issue, defense or request for relief that was**

**pleaded in the Complaint and response that is not memorialize in this Prehearing Order may**

**be precluded from being raised at the due process hearing per the discretion of the hearing**

**officer with the exception of jurisdictional issues . . .**"  AR at 377 (emphasis in original).  The

Court notes further that the issue of A.T's parents' meaningful participation in the placement decision was not raised during the due process hearing; however, as previously noted herein, because both parties have addressed this issue, it will be addressed briefly by this Court.

"While the IDEA requires a student's parents to be part of the team that creates the IEP and determines the educational placement of the child, it does not "explicitly require parental participation in the selection." *James v. Dist. of Columbia*, 949 F. Supp. 2d 134, 138 (D.D.C. 2013) (citing *White ex rel. White v. Ascension Parish Sch. Bd.*, 343 F. 3d 373, 379 (5th Cir. 2003)); *see also* 34 C.F.R. § 300.116 (requiring that the placement decision be based on a child's IEP and "made by a group of persons, including the parents. . . "); 34 C.F.R. § 300.513 ("in matters alleging a procedural violation, a IHO may find that a child did not receive a FAPE only if the procedural inadequacies . . . significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the parent's child"). DCPS contends that, in practice, the location of services is determined after the IEP meeting when specialists propose locations of services that can implement the IEP. Defendant explains that:

> The District looks at public and nonpublic schools to find a school or schools that have room for the child and that could implement the child's IEP. DCPS then selects a school or schools – a location of services – and informs the IEP team of that decision. Parents then have an opportunity to provide feedback, visit the school, and raise any concerns they have regarding the school.

Def.'s Opp'n, ECF No. 48, at 23.

In this case, there is no dispute that A.T.'s parents participated in the IEP team meeting where they and their educational consultant provided their input on services and hours of specialized instruction required in the IEP and expressed their opinion that A.T. required a non-public school. AR at 153-156. Nor is there any dispute that the parents were permitted to observe and raise objections to the location of services (Jefferson). A.T.'s mother and Dr. Solomon were

25

able to visit the proposed program at Jefferson – the BOOST program – on July 8, 2015, AR at 162, 320, 821-2, and they expressed their concerns about the appropriateness of Jefferson for A.T. AR at 326-27, 358-59.  On July 9, 2015, A.T.'s IEP was amended to include access to a key lock and early dismissal.  AR at 11.   The parents' unresolved concerns became the subject of a due process hearing and were subsequently set out in the Complaint in this case.

Plaintiffs assert herein that the determination of location of services must take place at the IEP meeting.  Pls' Mot., ECF No. 46, at 44-48.  Defendant notes that this is contrary to statutory authority providing that the child's placement must be "based on the child's IEP" and requiring the determination to be made "at least annually." 34 C.F.R. § 300. 116(b)(2).  Plaintiffs rely upon *Eley v. Dist. of Columbia*, 47 F. Supp. 3d 1, 11 (D.D.C. 2014) for the proposition that "the location where educational services are to be implemented is a vital portion of the student's educational placement." As Defendant notes however, *Eley* was about whether the student "was entitled to stay put protections when the school sought to transfer [the] student  [ ] from one private school to another private school."  Def.'s Opp'n, ECF No. 48, at 24; *see Eley*, 47 F. Supp. 3d at 8-17 (discussing the meaning of the phrase "then-current educational placement.")  Defendant points out a "disconnect" between the requirements of the IDEA regarding location of services decisions – that parents be afforded  "an opportunity to participate in the decision-making process" and the decision be "made by a group of persons, including the parents" 34 C.F.R. § 300.513(a)(2)(ii) – and the position of Plaintiffs that "if parents are given anything less than a veto power, they are not included in the decision-making process."  Def.'s Opp'n, ECF No. 48, at 24; *see T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 420 (2nd Cir. 2009) ("The parents' actions suggest that they seek a 'veto' over school choice, rather than 'input' – a power the IDEA clearly does not grant them."); *see also J.T. v. Dist. of Columbia*, Civil Action No. 19-989, 2020 WL 5865243, at *206

(D.D.C. Oct. 1, 2020) (examining the challenge to meaningful participation in the decision-making process regarding placement, where the parent participated in the IEP meeting and visited the suggested school, and concluding that "Plaintiff's reliance on cases in which a procedural defect was found to amount to a denial of FAPE is misplaced [as] [t]hose cases involved parents largely excluded from the IEP-development and school-placement processes . . .").

Accordingly, in light of the statutory authority and case law on the subject of meaningful participation in placement decisions, this Court finds that Plaintiffs are not entitled to summary judgment on this grounds.

### IV. Conclusion

Having examined each of the grounds asserted by Plaintiffs in their challenges to the Hearing Officer's Determinations, this Court finds that none of these challenges warrant reversal of the Hearing Officer's conclusion that there was no denial of FAPE.  Because Plaintiffs have not been able to establish a denial of FAPE, which is the first of three prongs to qualify for tuition reimbursement, *see Forest Grove Sch. Dist.*, 557 U.S. at 247, Plaintiffs' claim for reimbursement for tuition for School Year 2015-2016 is denied, and summary judgment shall be granted in favor of Defendant.   A separate Order accompanies this Memorandum Opinion.


_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

27